BARBARA BIERBRAUER and Another, Appellants, *v.* DAVID T. MORAN, Individually and as Executor, etc., of JOHN F. MORAN, Deceased, Respondent.

Fourth Department, March 13, 1935.

88

■■■■

*Thomas P. McCarrick* [*Adolph J. Rodenbeck* of counsel], for the appellants.

*Leo D. Mahoney,* for the respondent.

SEARS, P. J.   John F. Moran and Nettie R. Moran, residents of the city of Rochester, were husband and wife.   Both died on the 29th day of July, 1933.   The plaintiffs are Barbara Bierbrauer, the sole heir and next of kin of Nettie Moran, and David P. Bierbrauer, the administrator of her estate.   The defendant is the executor of John Moran's will and the sole devisee and legatee of his property. The judgment adjudicates the ownership of certain real and personal property.

The bodies of the husband and wife were not discovered until two days after their deaths.   The record establishes, and the trial court has found, that John Moran murdered his wife and then committed suicide.   The trial court also found, solely on circumstantial evidence, that John Moran survived his wife.   This finding, in our opinion, is not supported by the weight of the evidence. Nettie Moran's body was discovered in the bathroom on the second floor of their house.   The trial justice accurately summed up the story of the murder and suicide in these words: " On the evening of July 29, 1933, Moran beat and struck his wife while they were in the upper hallway of their home, and with a cord or rope around her neck he dragged her to the bathroom and struck her on the head with the heel of a shoe which she had been wearing; Moran left her in a dying condition upon the floor of the bathroom and before leaving he turned on the gas; after he left, Mrs. Moran with the last mite of her ebbing strength, grabbed hold of the bathtub and tried to raise herself up but was unable to do so and fell back against the door of the bathroom; the injuries inflicted by the blows of Moran and the strangulation were sufficient to cause her death; Moran thereafter committed suicide by inhaling gas." Moran's

body was found in a room on the lower floor seated in a chair with a tube from the illuminating gas jet in his mouth and a pillowcase drawn over his head. These facts are insufficient to show the survivorship of husband or of wife. The acts which resulted in the death of Nettie Moran preceded the acts which resulted in the death of John Moran, but no one can say with any degree of certainty what was the lapse of time between the assault upon the wife and the acts resulting in the husband's death or how long the flame of life flickered in the case of either of these two unhappy individuals. Speculation and probabilities do not suffice for factual determination. Our information is insufficient to allow a judicial answer to be given to the question of priority of death. (*Newell* v. *Nichols,* 75 N. Y. 78; *St. John* v. *Andrews Institute,* 191 id. 254; *Matter of Fowles,* 222 id. 222; *Matter of Englebirt,* 184 App. Div. 314; *Matter of Hayward,* 143 Misc. 401; affd., 237 App. Div. 823.) Where there is no proof of survivorship, the property of decedents is distributed as though the deaths were simultaneous. (*Newell* v. *Nichols, supra; St. John* v. *Andrews Institute, supra.*) In this case, however, another fact, namely, the willful murder of the wife by the husband, bears upon the problem of devolution of the property of the decedents. The effect of a willful homicide upon the right of its perpetrator to profit therefrom by inheritance, testamentary disposition or contract has been much discussed by courts and legal writers and diversity of opinion has resulted. (30 Harvard L. Rev. 622.) In this State two cases in the Court of Appeals, *Riggs* v. *Palmer* (115 N. Y. 506) and *Ellerson* v. *Westcott* (148 id. 149), have declared the principles which this court must apply in declaring rights to property depending on conditions of survivorship in such a case as this. (See, also, *Van Alstyne* v. *Tuffy,* 103 Misc. 456, opinion by THOMPSON, J., now a justice of this court; *Logan* v. *Whitley,* 129 App. Div. 666; *N. Y. Mut. Life Ins. Co.* v. *Armstrong,* 117 U. S. 591.) The basic principle applicable is that no man shall be permitted to profit by his own wrong. This rule is applicable to the wrongdoer's estate as well as to himself. In view of these authorities, it is unnecessary to consider or discuss the cases in other jurisdictions relating to the subject or the theories of law and equity which have been advanced. (References to the authorities and relevant writings are to be found in 30 Harvard L. Rev. 622; 18 C. J. 843, 858, and in *Beddingfield* v. *Estill,* 118 Tenn. 39; 100 S. W. 108; 9 L. R. A. [N. S.] 640, and in *Wall* v. *Pfanschmidt,* 265 Ill. 180; 106 N. E. 785; L. R. A. 1915C, 328, and note.)

John and Nettie Moran held certain real estate as joint tenants. Their deaths, without proof of survivorship, would have resulted,

were it not for the homicide, in a devolution of the property as though it had been held by them as tenants in common. (*McGhee v. Henry*, 144 Tenn. 548; 234 S. W. 509.) The willful killing of the wife by the husband, however, stands in the way of his devisee receiving any part of the property on the basis of the fact that the wife did not survive her husband. Else his estate would profit by his crime. The property held by husband and wife as joint tenants must, therefore, be adjudged to have passed upon their deaths to the heir of the wife, the plaintiff Barbara Bierbrauer.

No appeal has been taken from the determination as to the ownership of the real property held as tenants by the entirety, and the provision of the judgment declaring the ownership of such property is not before us.

At the time of the decedents' deaths there were on deposit in three savings banks and four trust companies an aggregate amount of $4,854.48 (not including two small accounts not involved in this appeal), the accounts in each case being in the name of Nettie R. Moran. All of the moneys on deposit were the proceeds directly or indirectly of withdrawals by Nettie Moran from accounts in banks, trust companies and a savings and loan association in the joint names of John F. and Nettie R. Moran with provision for survivorship. Nettie Moran, at the time of her death, also held six mortgages which had been made directly to her or had been assigned to her, all of which were paid for by her with moneys withdrawn, directly or indirectly, from accounts in banks, trust companies or a savings and loan association in the name of John F. and Nettie R. Moran, with right of survivorship. The defendant urges that the withdrawal of moneys by the wife from such joint accounts and the deposit of the moneys so withdrawn by the wife in her name, as well as the purchase of the mortgages, did not change the character of the ownership of moneys withdrawn and redeposited or reinvested from a joint ownership with right of survivorship to an individual one. (*Marrow* v. *Moskowitz*, 255 N. Y. 219, but see *Matter of Porianda*, 256 id. 423, and *Matter of Suter*, 258 id. 104.) The seven bank and trust company accounts and the six mortgages, according to the defendant's contention, were all properties owned by the husband and wife with right of survivorship similar in effect to the right of survivorship of joint tenants of real estate. The law in this respect is the same whether the deposits originally were in banks and trust companies and, therefore, governed by the provisions of sections 198 and 249 of the Banking Law, or in a savings and loan association and governed by the common law. (*Moskowitz* v. *Marrow*, 251 N. Y. 380; *O'Connor* v. *Dunnigan*, 158 App. Div. 334; affd., 213 N. Y. 676.) Even

accepting this contention of the defendant as to the character of the ownership of these accounts and mortgages, to allow the executor of the will of John F. Moran to share in them would be to allow the estate of the murderer to profit by his felonious act. Except for that act his wife would presumably have still been living when he died. The same general principle must then be applicable as to such joint interests as in the case of the real estate held by husband and wife in joint tenancy, and all of the accounts in banks and trust companies to which this appeal relates as well as the mortgages are part of the estate of the wife.

There was one deposit, namely, that in the Twentieth Ward Co-Operative Savings and Loan Association, which did not originate in any deposit in the name of husband and wife with right of survivorship, but originated in a deposit in the association in the name of husband and wife with no provision for survivorship. The ultimate source of the moneys going into this account is uncertain and the history of the account is obscure. We think the record is insufficient to establish as to this account an intention that there should be a right of survivorship. (*Matter of Albrecht*, 136 N. Y. 91; *Wetherow* v. *Lord*, 41 App. Div. 413.) This deposit, therefore, although in the name of Nettie Moran when she died, must be deemed to have been owned by her and her husband equally without right of survivorship, and ownership of half of this account is in the defendant as executor and of the other half is in plaintiff, administrator, as the trial court determined.

The judgment should be modified on the law and the facts in accordance with this opinion, and as modified affirmed, without costs. Findings of fact numbered " forty-fourth " and " eighty-second " in the defendant's requests are disapproved and reversed.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

Judgment modified on the law and facts in accordance with the opinion and as modified affirmed, without costs of this appeal to either party. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.